# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| **KIMBERLY J. BUCHANAN,** | **CV 14-108-BLG-CSO** |
| **Plaintiff,** | |
| | **<u>ORDER</u>** |
| **vs.** | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | |
| **Defendant.** | |

Plaintiff Kimberly J. Buchanan ("Buchanan") seeks judicial review of Defendant Acting Commissioner of Social Security's ("Commissioner") decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c). *Cmplt. (ECF 2).*[1] On October 31, 2014, upon the parties' written consent, this matter was assigned to the undersigned for all proceedings. *Notice of Assignment (ECF 12).*

---

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.* Citations to pages are to those assigned by the ECF system.

On December 24, 2014, Buchanan filed her opening brief.

*Buchanan's Br. (ECF 13)*.  On January 22, 2015, the Commissioner

filed her response brief.  *Commissioner's Br. (ECF 15)*.  And on March

9, 2015, Buchanan filed her reply brief.  *Buchanan's Reply Br. (ECF

18)*.  Having reviewed the Administrative Record ("AR")[2] and the

parties' arguments, the Court rules as set forth below.

## I.    PROCEDURAL BACKGROUND

This is Buchanan's second case before this Court seeking judicial

review of a Social Security Commissioner's decision denying her claims

for benefits.

### A.    *Buchanan I*

In her first case, *Buchanan v. Astrue*, CV 12-149-BLG-RFC-CSO

("*Buchanan I*"), Buchanan applied for DIB and SSI on January 12,

2010, claiming that her disability began on April 18, 2009.  *AR 105*.

The Social Security Administration ("SSA") denied her applications

initially and on reconsideration.  *Id*.  An Administrative Law Judge

_____

[2]In citing to the AR, the Court cites to page numbers as assigned
in the AR and not by numbers as assigned by the Court's electronic
filing system.

("ALJ") held a hearing and issued a written decision denying Buchanan's claims for benefits after finding her not disabled as of the August 24, 2011 decision date. *AR 105-14.* On September 28, 2012, the Appeals Council denied Buchanan's request for review. *AR 115-20.*

On November 30, 2012, Buchanan filed an action in this Court seeking judicial review of the Commissioner's decision. *Buchanan I, Cmplt. (ECF 5); AR 123-26.* On July 9, 2013, the undersigned issued an Order affirming the Commissioner's decision denying DIB and SSI. *Buchanan I, Order (ECF 34) at 27.* The Clerk of Court entered Judgment. *Buchanan I, Judgment (ECF 35).*

On August 27, 2013, Buchanan filed a Notice of Appeal to the Ninth Circuit Court of Appeals. *Buchanan I, Notice of Appeal (ECF 38).* As of the date of this Order, the appeal of *Buchanan I* remains pending with the Ninth Circuit. *Buchanan v. Colvin*, 13-35783 (9th Cir.).

**B.    Buchanan's Present Case**

In the case now before the Court, on October 27, 2012, Buchanan protectively filed applications for DIB and SSI claiming an onset-of-

disability date of August 25, 2011 – that is, the day following the ALJ's decision in *Buchanan I. AR 12, 261-65, 267-73.* She claims to be disabled based on limitations imposed by right shoulder degenerative joint disease, obesity, carpal tunnel syndrome, bilateral knee degenerative changes with chondromalacia, lumbar and thoracic degenerative disc disease, personality disorder, and depression. *ECF 2 at 2; AR 14.* The SSA denied her applications initially and upon reconsideration. *AR 134-35, 160-61.*

On March 19, 2014, an ALJ held a hearing, at which Buchanan was present with an attorney representing her. *AR 28-101.* On April 14, 2014, the ALJ issued a written decision denying Buchanan's claims for DIB and SSI. *AR 12-22.*

On June 24, 2014, the Appeals Council denied Buchanan's request for review making the ALJ's decision final for purposes of judicial review. *AR 1-5*; 20 C.F.R. § 404.981 (2013). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. <u>STANDARD OF REVIEW</u>

This Court's review is limited. The Court may set aside the

Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Garcia v. Commr. of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014) (citation omitted); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in the testimony, and resolving ambiguities in the record. *Treichler v. Comm'n of Soc. Security*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citations

omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III. <u>BURDEN OF PROOF</u>

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4. If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5. If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that

the claimant can perform.  *Id.*  The Commissioner can meet this burden

via the testimony of a vocational expert or reference to the Medical-

Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2.  *Id.*  If the

Commissioner is unable to meet this burden then the claimant is

disabled and entitled to benefits.  *Id.*

## IV.  **THE ALJ's OPINION**

In his written decision, the ALJ followed the five-step sequential

evaluation process in considering Buchanan's claim for benefits.  First,

the ALJ found that Buchanan had not engaged in substantial gainful

activity during the period from her alleged August 25, 2011 onset date

through the April 14, 2014 decision date.  *AR 14, 22.*

Second, the ALJ found that Buchanan has the following severe

impairments: "right shoulder degenerative joint disease, obesity, carpal

tunnel syndrome, bilateral knee degenerative changes with

chondromalacia, lumbar and thoracic degenerative disc disease,

personality disorder, and depression."  *AR 14.*

Third, the ALJ found that Buchanan does not have an

impairment or combination of impairments that meets or medically

equals the severity of any one of the impairments in the Listing of Impairments. *AR 15-17*.

The ALJ next found that Buchanan, during the relevant time frame, had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can walk 3-4 blocks at one time, and stand up to 30 minutes at one time. She can stand/walk a total of up to 4 hours per day, and must alternate between sitting, standing, and walking on occasion. She can sit up to 6 hours per day. She can occasionally lift/carry objects weighing up to 10 pounds and frequently lift/carry less than 10 pounds. She can reach or lift overhead with her right arm on occasion, with objects weighing up to 2 pounds. She can occasionally balance, stoop, crouch, and climb stairs. She can never crawl or climb ladders. She can frequently, but not repetitively, perform fine and gross manipulations. She can have brief and superficial contact with 2-3 members of the public at one time. Work must be routine, but not require understanding or carrying out of detailed, skilled tasks. Work must not require constant focus or attention. She must avoid concentrated exposure to vibrations and cold.

*AR 17-18*.

At the fourth step of the evaluation process, the ALJ found that Buchanan is unable to perform her past relevant work as a bartender and business manager. *AR 20*.

Fifth, the ALJ found that Buchanan could perform jobs that exist

-9-

in significant numbers in the national economy. He considered Buchanan's age on her alleged onset date (43 years old, which is defined as a younger individual under the Social Security regulations), education (at least a high school education and is able to communicate in English), work experience, and RFC. *AR 20-21*. Relying on testimony from a vocational expert ("VE") who also considered the above factors, the ALJ concluded that Buchanan could perform work in the following representative occupations: order clerk, laundry clerk, and lost card charge clerk. *AR 21*. Thus, the ALJ determined that Buchanan was not disabled. *AR 21-22*.

## V.   SUMMARY OF PARTIES' ARGUMENTS

Buchanan argues that the ALJ erred in four principal ways: (1) by ignoring record evidence respecting her right shoulder, knees, elbows, hands, plantar fasciitis, and mental limitations, *Buchanan's Opening Br. (ECF 13) at 25-32*; (2) by improperly finding her to be not fully credible respecting her functional limitations imposed by her impairments, *id. at 28-30*; (3) by improperly evaluating opinion evidence provided by her medical providers, *id. at 31-34*; and (4) by

failing to include in his hypothetical question to the vocational expert all of her limitations, *id. at 35-36*. Buchanan urges the Court to remand this case for "a proper consideration of all of [her] impairments, credibility, proper consideration of the medical evidence and proper vocational consideration." *Id. at 36*. She alternatively seeks the Court's order crediting her testimony, finding her disabled, and remanding for an award of benefits. *Id. at 36-37*.

In response, the Commissioner argues that: (1) the ALJ properly supported with substantial evidence his conclusions respecting Buchanan's right shoulder, knees, elbows, hands, plantar fasciitis, and mental limitations, *Comm.'s Br. (ECF 15) at 5-12*; (2) the ALJ stated clear and convincing reasons for concluding that Buchanan was not fully credible respecting her functional limitations imposed by her impairments, *id. at 13-21*; (3) the ALJ did not err in his consideration of opinion evidence provided by Buchanan's medical providers and other witnesses, *id. at 21-25*; and (4) the ALJ properly included in his hypothetical question to the vocational expert all of Buchanan's credible limitations and thus did not err in concluding that she was not

disabled, *id. at 25-26*. The Commissioner also argues that, if the Court concludes that the ALJ's decision is plagued by harmful error, the appropriate remedy is remand for further proceedings because of significant outstanding factual issues in the record. *Id. at 26-28*.

In reply, Buchanan argues that: (1) the Commissioner admits that the ALJ erroneously omitted from his decision an evaluation of Dr. Donna Veraldi's testimony, *Buchanan's Reply Br. (ECF 18) at 2*; (2) this omission, which included Dr. Veraldi's discussion of Buchanan's mental health conditions, was error because it proves both that Buchanan was credible and that other medical opinions in the record are corroborated, *id. at 2-7*; (3) the ALJ failed to present "any medical expert evidence entitled to weight which is contrary to the limitations described by [Buchanan]" and no physician discounted her complaints, *id. at 7-9*; (4) she has "numerous limitations completely ignored by the [ALJ]" and factored into her RFC, such as arm pain and numbness, cramping in her hands, knee pain, and depression, *id. at 9-10*; (5) the ALJ erred in failing to conclude that her plantar fasciitis was severe because of her failure to return for follow up because treatment was complicated by

limited finances and a pending Medicaid appeal, *id. at 10-11*; (6) the ALJ erred in failing to properly incorporate into his RFC her restrictions imposed by carpel tunnel syndrome, *id. at 11*; (7) her testimony respecting her mental limitations was consistent with Dr. Veraldi's testimony, rendering the ALJ's conclusions about her credibility erroneous, *id. at 11-12*; and (8) the ALJ erred in his credibility determination based on Buchanan's improvement with treatment because: (a) she could not always afford treatment; (b) although she could sometimes perform some activities, that was not always the case; and (c) her socially functioning was more limited than the ALJ found as evidenced by her departure from a Thanksgiving celebration because she did not like some of the people in attendance, became angry, and went walking "until she suffered plantar fasciitis[,]" *id. at 13-14*.

## VI. <u>DISCUSSION</u>

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of harmful legal error. The Court is not permitted to re-weigh the

evidence.

For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court finds that the ALJ's decision is based on substantial evidence in the record, and is free of harmful legal error. Therefore, the Court concludes that the decision should be affirmed.

## A.    ALJ's Consideration of the Evidence

In evaluating Buchanan's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review th[at] decision[ ] intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted).  In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a detailed decision. *AR 12-22*.  He clearly stated his rationale for rejecting some evidence in his assessment of Buchanan's medical records, credibility, and RFC.  *Id*.  The ALJ also set forth the evidence – which the Court concludes is substantial – that

informed and supported his conclusion with respect to Buchanan's disability claim. *Id.* For these reasons, and after the Court's own review of the entire record, the Court finds that the ALJ properly considered all evidence. In short, the ALJ did not err.

As for Buchanan's specific argument that the ALJ failed to properly consider evidence relating to her right shoulder, knees, elbows, hands, plantar fasciitis, and mental limitations, the Court is not persuaded. First, respecting her shoulder pain, the ALJ expressly determined at step two of the sequential evaluation process that she had a severe impairment of "right shoulder degenerative joint disease[.]" *AR 14.* And, as noted above, he included in his assessment of her RFC limitations respecting the shoulder impairment, including that Buchanan "can reach or lift overhead with her right arm on occasion, with objects weighing up to 2 pounds." *AR 17.*

And, the ALJ noted only minimal medical evidence supporting Buchanan's position respecting limitations imposed by her shoulder pain, including that Buchanan: (1) reported to Dr. Michael D. Geurin, M.D. ("Dr. Geurin"), in February 2012, that her shoulders were hurting

and he observed "[t]enderness to palpation in her shoulder[,]" but also that Buchanan was able to ambulate without assistance and was "pleasant and cooperative[,]" which are inconsistent with disabling pain, *AR 19*; (2) complained to Dr. Geurin in May 2013 of continued shoulder pain, which increased after a fall, but that an x-ray "revealed only mild arthritis in the AC joint, and a small ossification adjacent to the corocoid process," *id*.; and (3) received a steroidal injection in her shoulder in August 2013 after which she reported no pain, *id*.

Also, the ALJ observed that Buchanan did not report her joint pain consistently. *Id*. In light of the ALJ's conclusions respecting Buchanan's credibility, discussed below, he was not required to give more weight to Buchanan's pain complaints and the degree to which she contends the pain limits her ability to function.

Second, respecting Buchanan's knees, the ALJ expressly determined at step two of the sequential evaluation process that she had a severe impairment of "bilateral knee degenerative changes with chondromalacia[.]"[3] *AR 14*. In his written opinion, the ALJ noted that:

_____

[3]Chondromalacia is "[a]bnormal softening or degeneration of cartilage of the joints, especially of the knee." *The American Heritage®*

(1) multiple medical records indicated that Buchanan was able to ambulate without assistance and had an MRI of her knee in 2010 that "revealed only minimal degenerative changes and chondromalacia[,]" *AR 18*; (2) Buchanan stated "that she had been walking 'a lot' because her car was not drivable[ ]" the last few months of 2012, *AR 19*; and (3) Buchanan did not report her joint pain consistently, *id*. He also factored into his determination of her RFC Buchanan's knee pain by concluding that Buchanan could do certain sedentary work, provided she was restricted to walking no more than three to four blocks at a time, standing no more than thirty minutes at a time, and standing and walking no more than four hours per day while being permitted to alternate between sitting, standing, and walking on occasion. *AR 17*. Although Buchanan points to evidence that she has cramping in her knee after walking only 200 feet and that the ALJ set forth no basis for ignoring her walking limitations, *ECF 13 at 26-27*, the evidence Buchanan relies upon was actually only her own report to Dr. Geurin, as noted in his treatment notes, and was not his assessment of her

---

*Stedman's Medical Dictionary* (retrieved February 06, 2015, from Dictionary.com: http://dictionary.reference.com/browse/chondromalacia

functional capabilities. *AR 386.* Also, as the ALJ notes, Buchanan's assertion respecting her walking limitations is inconsistent with her admission that she walked through the snow for more than an hour in November 2012 (*AR 20*) and had been walking "a lot" during that time because her car was not operational. *AR 19.*

Third, respecting Buchanan's elbows, hands, and problems gripping, the Court concludes that the ALJ properly considered evidence of Buchanan's related functional limitations. The ALJ: (1) found carpel tunnel syndrome to be a severe impairment at step two, *AR 14*; (2) discussed Buchanan's elbow and wrist pain, *AR 18*; (3) noted that a November 2010 EMG of her wrist and hand was not significant, *id.*; (4) mentioned evidence that Buchanan had a surgical decompression of her left ulnar nerve in July 2011, *id.*; (5) discussed Buchanan's complaints of arm pain scattered throughout her medical records, *AR 19*; (6) referenced a vocational rehabilitation report that noted Buchanan's carpel tunnel syndrome limited her ability to grasp or lift, *AR 20*; and (7) factored into his assessment of Buchanan's RFC her limitations from these impairments by concluding that she had the

ability to lift no more than ten pounds and that "[s]he can frequently, but not repetitively, perform fine and gross manipulations[,]" *AR 17*. From his discussion of these impairments and assessment of the functional limitations they impose, the Court concludes that the ALJ properly considered the evidence and did not err.

Fourth, respecting Buchanan's plantar fasciitis, although the ALJ did not find that this is a severe impairment for Buchanan, he did note its existence. *AR 19*. And he noted that after she was diagnosed with plantar fasciitis, Buchanan never returned for a follow-up visit for the condition. *Id*. As already stated, the ALJ noted that Buchanan admitted at the time that she had been walking "a lot" and the ALJ concluded that this indicated "she was capable of walking if necessary, and was at least capable of work activity within the confines of the [RFC]." *Id*. Buchanan points to no evidence of record that is inconsistent with the ALJ's conclusion. Also, Buchanan provides no argument respecting functional limitations that plantar fasciitis imposes upon her beyond those already identified by the ALJ in assessing her RFC. Thus, he did not err.

Finally, respecting Buchanan's mental limitations, the ALJ found at step two that Buchanan's personality disorder and depression are severe impairments. *AR 14*. Also, the ALJ: (1) discussed Buchanan's complaints of low energy, irritability, and inability to concentrate, *AR 18*; (2) discussed the "paragraph B" criteria as part of step three, including her mental impairments' effect on Buchanan's activities of daily living, social functioning, maintaining concentration, persistence, and pace, and episodes of decompensation, *AR 16-17*; (3) thoroughly discussed Buchanan's medical records, including the extent to which they included her mental impairments, *AR 18-20*; (4) noted treatment of Buchanan's depression with Cymbalta, *AR 18*; (5) recounted examination notes in which it was observed that Buchanan's mental health symptoms were tied to situational stressors, *AR 20*; and (6) stated that treatment records reflected that Buchanan indicated that she was considering returning to work, but in a less physically demanding job, *id*.

And, the ALJ called on Dr. Donna Veraldi, Ph.D., as a medical expert to testify at Buchanan's hearing. *AR 12, 80-86*. The

Commissioner concedes that the ALJ erred in omitting from his written decision an evaluation of Dr. Veraldi's testimony. *ECF 15 at 24.* But any error was harmless. *Carmickle v. Commissioner,* 533 F.3d 1155, 1162-1163 (9th Cir. 2011) (relevant inquiry "is whether the ALJ's decision remains legally valid, despite ... error."). In assessing Buchanan's RFC, the ALJ's conclusions are consistent with Dr. Veraldi's assessment of Buchanan's functional capacity. As noted, the ALJ concluded that Buchanan is limited to routine work not requiring the understanding or carrying out of detailed, skilled tasks, and work that does not require constant focus or attention. *AR 17-18.* The ALJ's decision remains legally valid even without discussion of Dr. Veraldi's relevant hearing testimony.

For all of the foregoing reasons, the Court concludes that the ALJ based his decision on substantial evidence and did not commit harmful error in his conclusions. Buchanan is simply urging the Court to reweigh the evidence, and to arrive at a conclusion different from that reached by the ALJ. The Court is not permitted to do so. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). As noted, the ALJ repeatedly

acknowledged Buchanan's impairments and her functional limitations stemming from them. In doing so, the ALJ considered and acknowledged the medical evidence of record that demonstrates these impairments. But "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citation omitted). The ALJ did not err in concluding that the records do not indicate a sustained severe loss of function that necessarily would render Buchanan incapable of engaging in any substantial gainful activity.

### B.   <u>ALJ's Assessment of Buchanan's Credibility</u>

Buchanan argues that "[t]he ALJ erred in finding [her] testimony relative to her limitations not credible without an analysis required under 20 C.F.R. §§[sic] 404.1529(c)(3)." *ECF 13 at 33*. She argues that "[t]here is a complete lack of findings upon which the ALJ relies to determine [Buchanan] is not telling the truth. The lack of specific findings as to how [Buchanan's] activities are inconsistent with her physical limitations mandates the matter be remanded or the ALJ decision reversed." *Id*. The Court disagrees.

In *Molina v. Astrue*, the Ninth Circuit restated the long-standing

standard for assessing a claimant's credibility as follows:

> In assessing the credibility of a claimant's testimony
> regarding subjective pain or the intensity of symptoms, the
> ALJ engages in a two-step analysis. First, the ALJ must
> determine whether there is objective medical evidence of an
> underlying impairment which could reasonably be expected
> to produce the pain or other symptoms alleged. If the
> claimant has presented such evidence, and there is no
> evidence of malingering, then the ALJ must give specific,
> clear and convincing reasons in order to reject the claimant's
> testimony about the severity of the symptoms. At the same
> time, the ALJ is not required to believe every allegation of
> disabling pain, or else disability benefits would be available
> for the asking, a result plainly contrary to 42 U.S.C. §
> 423(d)(5)(A). In evaluating the claimant's testimony, the
> ALJ may use ordinary techniques of credibility evaluation.
> For instance, the ALJ may consider inconsistencies either in
> the claimant's testimony or between the testimony and the
> claimant's conduct, unexplained or inadequately explained
> failure to seek treatment or to follow a prescribed course of
> treatment, and whether the claimant engages in daily
> activities inconsistent with the alleged symptoms. While a
> claimant need not vegetate in a dark room in order to be
> eligible for benefits, the ALJ may discredit a claimant's
> testimony when the claimant reports participation in
> everyday activities indicating capacities that are
> transferable to a work setting. Even where those activities
> suggest some difficulty functioning, they may be grounds for
> discrediting the claimant's testimony to the extent that they
> contradict claims of a totally debilitating impairment.

674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations and internal quotations

omitted).

Here, the ALJ found objective medical evidence of underlying impairments that could reasonably be expected to produce the symptoms alleged. *AR 18.* Also, the ALJ did not expressly find that Buchanan was malingering. Thus, to find that Buchanan was not entirely credible, the ALJ had to give specific, clear, and convincing reasons. The Court concludes that he did.

First, the ALJ observed that objective medical evidence of record was inconsistent with Buchanan's characterization of the severity of her symptoms and that she appeared to be exaggerating her symptoms. *AR 19.* For example, the ALJ noted that Buchanan reported to Dr. Geurin in December 2011 that her left leg pain was so severe that it felt as though someone "twisted her lower leg off." *Id.* Despite Buchanan's characterization of her leg pain, Dr. Geurin observed that Buchanan was ambulating without assistance and was pleasant, observations inconsistent with Buchanan's own characterization of her pain.

Next, in February 2012, Buchanan alleged that her pain was

eight on a scale of one to ten, but Dr. Geurin reported that she ambulated without assistance and was pleasant and cooperative. And, in a follow-up visit in August 2012, Buchanan reported pain in both knees but had full range of motion in her right knee despite some tenderness, had no pain with straight leg lifts, and ambulated without assistance. From these inconsistencies, the ALJ concluded that "her symptoms were likely not as severe or persistent as alleged." *Id*.

The ALJ also noted that later, in October and December 2012, Buchanan complained of pain in her knee and back, but "her symptoms were of unclear etiology." *Id*. And although, as noted, she was diagnosed with possible plantar fasciitis, she did not return for follow-up treatment, had been walking a lot, and was noted by Dr. Geurin to be ambulating without assistance, to have normal eye contact, and to be fully oriented. *Id*. In sum, the ALJ found the medical evidence of record inconsistent with Buchanan's allegations respecting the severity of her pain and functional limitations.

Second, the ALJ noted that Buchanan received relatively conservative treatment, showed improvement with some treatment,

and failed to follow other suggested treatment, all of which indicates that her symptoms were not as severe as she alleged.  For example, the ALJ observed that in September 2011, glucosamine, an over-the-counter joint conditioner, was recommended to treat Buchanan's knee pain.  *Id*.  Evidence of conservative treatment can be considered in discounting a claimant's allegations about the severity of symptoms. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (*citing Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Also, respecting improvement of symptoms with some treatment, the ALJ noted that Buchanan received a steroid injection for her shoulder pain with no reports of pain afterward.  AR 19  And, the ALJ stated that Buchanan had indicated, at a time shortly after her alleged onset date, that her depression was well-controlled with medication. *AR 20*.  The effectiveness of treatment or medication is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

Finally, the ALJ also noted that Buchanan admitted that she had not been performing prescribed stretching exercises to relieve foot pain.

AR 20. Failure to follow prescribed courses of treatment can be considered in evaluating a claimant's credibility respecting disabling symptoms. Molina, 674 F.3d at 1112-13.

For the foregoing reasons, the Court thus concludes that the ALJ did not err. In reaching his conclusion respecting Buchanan's credibility, the ALJ employed ordinary credibility evaluation techniques, as he was permitted to do. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (setting forth what an ALJ may consider in determining a claimant's credibility); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). Buchanan, again, is urging the Court to reweigh the evidence, and to arrive at a conclusion different from that reached by the ALJ. As noted, The Court is not permitted to do so. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

In sum, the Court concludes that the ALJ gave specific, clear, and convincing reasons for finding that Buchanan was not credible to the extent she alleges inability to perform all work activity. Thus, the ALJ did not err.

## C.    ALJ's Assessment of Medical Opinion Evidence

Although the precise bases for her allegation of error is not entirely clear to the Court, Buchanan appears to argue that the ALJ erred in concluding that she is not disabled because none of her self-reported "limitations were ... questioned by her physicians." *ECF 13 at 34.*  She argues that, because her physicians did not question her description of her limitations respecting "standing, walking, use of her hands, and mental limitations, all confirmed in the medical records[,]" the ALJ erred in not accepting those limitations as established by medical evidence.  *Id. at 33-34.*  Thus, she argues that the ALJ erred in improperly discounting the findings and opinions of her treating physicians.  *Id. at 26, 29.*  The Court is not persuaded.

As noted above and throughout the ALJ's written decision, Buchanan's treating physician, Dr. Geurin, recorded in his notes essentially normal and unremarkable findings resulting from multiple examinations of Buchanan.  "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] case record, [it will be given] controlling weight."
*Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9ᵗʰ Cir. 2014) (*quoting Orn v.
Astrue*, 495 F.3d 625, 631 (9th Cir.2007) (internal quotations omitted)
(alterations in original) and 20 C.F.R. § 404.1527(c)(2)). And, Dr.
Geurin did not offer an opinion in his treatment notes of record about
Buchanan's functional limitations. Without such opinion, Buchanan
cannot argue that the ALJ erred in rejecting it. Also, Buchanan points
to no other evidence supporting her argument that the ALJ failed to
properly consider the medical evidence of record.

Similarly, as noted, the ALJ addressed in his written decision
mental health treatment records from Riverstone Health. The ALJ
observed that the records indicate that Buchanan's symptoms of
depression were largely due to situational stressors and noted that
such symptoms were generally well controlled with medication. *AR 20*.
Buchanan points to no other evidence supporting her argument that
the ALJ failed to properly consider mental health evidence of record.

For all of these reasons, the Court concludes that the ALJ did not
err.

**D. ALJ's Consideration of Vocational Expert's Opinion**

In her opening brief, Buchanan argues that the ALJ erred in failing to include in his hypothetical question to the vocational expert all of Buchanan's limitations. *ECF 13 at 35-36.* The Court is not persuaded.

As discussed above, the Court has already determined that the ALJ based his decision on substantial evidence in the record. And it has concluded that the ALJ did not err either in his assessment of the medical evidence or in his assessment of Buchanan's credibility regarding her symptoms and limitations. The ALJ was not required to include in his hypothetical question to the vocational expert Buchanan's symptoms and limitations not supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."). Rather, the ALJ was free to consider the evidence as a whole in making his determination as to Buchanan's limitations. The Court concludes he did so, and thus he did not err.

## VII. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision denying DIB and SSI is AFFIRMED.

The Clerk of Court shall enter Judgment accordingly and close this case.

DATED this 13th day of March, 2015.


/S/ Carolyn S. Ostby
United States Magistrate Judge